IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SYLVIA NUÑEZ,

        **Plaintiff,**

vs.                                                                                    No.  99cv0776 BB/JHG

**KENNETH S. APFEL,**
**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

      This matter is before the Court on Plaintiff's (Nuñez') Motion to Reverse or Remand Administrative Decision, filed March 21, 2000.  The Commissioner of Social Security issued a final decision denying Nuñez' application for a disability insurance benefits and supplemental security income.  The United States Magistrate Judge, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion to remand is well taken and recommends that it be GRANTED.

      Nuñez, now forty-seven years old, filed her application for disability insurance benefits and supplemental security income on January 6, 1994, alleging disability since November 30, 1993, due to degenerative joint disease of the cervical spine, myofascial pain syndrome and depression. She has a high school education (GED) with past relevant work as a staff assistant at a university. On December 19, 1995, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Nuñez did not have any disorder or combination of disorders meeting or equaling in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1.  The

ALJ found Nuñez had a "severe" impairment or combination of impairments, specifically, degenerative joint disease of the cervical spine and myofascial pain syndrome. Tr. 16. The ALJ further found Nuñez retained the residual functional capacity(RFC) for a limited range of light work[1] on a sustained basis. Tr. 19. As to her credibility, the ALJ found Nuñez was not a credible witness. *Id.* Nuñez filed a Request for Review of the decision by the Appeals Council. On August 19, 1996, the Appeals Council denied Nuñez' request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Nuñez then sought judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

On December 12, 1997, the United States District Judge remanded the case back to the Commissioner to allow the ALJ to make specific findings in the record for the three phases of analysis for step four of the sequential evaluation process as articulated in *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996). On May 16, 1998, the Office of Hearings and Appeals vacated the final decision of the Commissioner and remanded the case back to the ALJ for further proceedings consistent with the Remand Order of the United States District Judge.

On March 2, 1999, the ALJ held an administrative hearing. On June 25, 1999, the ALJ issued her Decision finding Nuñez was not disabled. Nuñez complained of chronic severe multiple musculoskeletal pain, asthma, hypothyroidism, anemia, and chronic depression. The ALJ

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, a claimant must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

found Nuñez had "not met her burden of demonstrating, pursuant to guidelines provided by Social Security Rulings 96-3p[2] and 85-15, that she has experienced more than a minimal impact on her capacities for work related functioning due to anemia, depression, or any other severe underlying mental disorder." Tr. 215-16. As to Nuñez' other impairments, the ALJ found the impairments had not met or equaled a listed impairment as found in Appendix 1, Subpart P, Regulations No. 4. The ALJ reviewed sections 1.00 (Musculoskeletal System), 3.00 (Respiratory System), and 9.00 (Endocrine System). *Id*. The ALJ also found Nuñez' "testimony of subjective complaint and functional limitations, including pain, was not supported by the evidence as a whole in the disabling degree alleged and therefore lacked credibility." *Id.* The ALJ concluded Nuñez had been able to perform her past relevant work as an administrative assistant, which was skilled and exertionally sedentary in nature. Tr. 219. Nuñez then filed this action, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record

---

[2] Social Security Ruling 96-3p restates and clarifies the Social Security Administration's policies for considering allegations of pain or other symptoms in determining whether individuals claiming disability benefits under Title II and XVI of the Social Security Act have a "severe" medically determinable physical or mental impairment or impairments. The evaluation of whether an impairment is "severe" is done at step two of the sequential evaluation process and requires an assessment of the functionally limiting effects of an impairment(s) on an individual's ability to do basic work activities. SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996).

or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse or remand, Nuñez makes the following arguments: (1) the ALJ erred in concluding that she was not credible; (2) the ALJ erred at step two of the sequential evaluation when she concluded her mental impairment was not severe; (3) the ALJ erred in her step four analysis by failing to assess the impact of her mental impairment on her ability to perform her past relevant work; and (4) the ALJ erred in ignoring the vocational

expert's testimony in rendering her unfavorable decision.

Nuñez contends the ALJ erred in concluding her testimony was not credible. Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988).

In her June 25, 1999 Decision, the ALJ found Nuñez not credible for several reasons.  In terms of Nuñez' complaints of depression, the ALJ found "it was not credible that the claimant can not (sic) have her depression treated because of financial difficulties"and because Nuñez "did not testify to any vegetative symptoms associated with depression, or to any particular work related functional restrictions, nor has any doctor stated that her depression [was] associated with any vegetative symptoms or cause[d] any work related functional difficulties."  Tr. 216-17.

At the second administrative hearing, held on March 2, 1999, Nuñez testified she was depressed but did not take any antidepressants and did not see a counselor.  Tr. 378.  Nuñez further testified she had seen the counselor about three or four times but stopped because it was hard for her to get around. *Id.*  Nuñez also testified she was prescribed an antidepressant but never took it because she couldn't buy it.  Tr. 378-79.  The record supports Nuñez' assertions.

On September 25, 1997, a University Hospital physician diagnosed Nuñez with depression and prescribed Zoloft.  Tr. 306.  Dr. Goncalves, a psychologist, also saw Nuñez on September 25, 1997, and noted he had last seen Nuñez on July 15, 1994.  Tr. 307.  His diagnostic impression was "rule out major depression secondary to pain." *Id.*  Dr. Goncalves' notes from the July 15,

1994 visit indicate Dr. Marcus referred Nuñez for pain management and not for depression.  Tr. 178.  Dr. Goncalves also noted no evidence of a thought disorder or suicide ideation and deferred making a diagnosis.  *Id.*  On April 8, 1994, Dr. David Schneider performed a consultative examination and noted there was no evidence of any restrictions of daily interests or daily activities on the basis of any psychological problems and no evidence of active psychosis.  Tr. 148.  On November 6, 1997, a physician noted Nuñez had not been able to get her prescription for Zoloft because she had no money.  Tr. 304.  At that time, the physician advised her to start the Zoloft.  *Id.*  On November 6, 1997, Nuñez had a counseling session with Dr. Goncalves.  Tr. 305.  Dr. Goncalves diagnostic impression was "rule out major depression, secondary to pain."  *Id.*

Substantial evidence supports the ALJ's finding that Nuñez' conduct with respect to her complaints of depression was inconsistent and suggested that her condition was *not as severe as she alleged.*  Tr. 216.  Nuñez had one counseling session with Dr. Goncalves in 1994 for pain management and did not return to see him again until 1997.  In 1997, Nuñez saw Dr. Goncalves only twice.  Dr. Goncalves did not diagnose Nuñez with major depression.  Dr. Goncalves noted he was going to "rule out major depression."  However, because Nuñez never returned for any follow-up visits, Dr. Goncalves never made a definitive diagnosis.  Nuñez also never followed the doctors' orders to start Zoloft.  Nuñez claimed she was not able to buy them due to lack of money.

"[B]efore the ALJ may rely on the claimant's failure to pursue treatment or take medications as support for his determination of noncredibility, he or she should consider (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and if so, (4) whether the refusal was

6

without justifiable excuse." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)(internal quotations omitted).

In this case, the ALJ found at step two of the sequential evaluation process that Nuñez' depression only minimally impacted her ability to work. Therefore, the ALJ did not make a finding that treatment, i.e., counseling and antidepressants, would restore Nuñez' ability to work. However, the ALJ did address the fact that counseling and antidepressants had been ordered and also noted Nuñez had not complied with the recommended treatment. Nuñez claimed she could not afford to continue counseling or to fill her prescription for Zoloft because of lack of funds. However, the record contains no evidence Nuñez sought medical treatment but was refused for an inability to pay. *See, Galdean v. Chater*, 74 F.3d 1249, 1996 WL 23199, at **2, (10th Cir. Jan. 1996)(unpublished disposition)(citing *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992)(failure to seek low-cost medical treatment and lack of evidence claimant had been denied medical care because of financial condition supports determination that claimant's financial hardship was not severe enough to justify failure to seek medical treatment). In fact, the record reflects that on January 21, 1997, a University Hospital health care provider noted that Nuñez had been off her Synthroid for two months due to lack of funds. Tr. 325. At that time, the health care provider's notes indicate he discussed the dangerous consequences of not taking her Synthroid and ordered that she be scheduled to meet with a financial counselor. *Id.* The record is silent as to whether Nuñez ever met with the financial counselor. Based on the record as a whole, substantial evidence supports the ALJ's finding that Nuñez was not credible with respect to her complaints of depression to the degree alleged.

As far as Nuñez' credibility in terms of her other subjective complaints and functional

limitations, including pain, the ALJ found as follows:

> The claimant's testimony of subjective complaints and functional limitations, including pain, was not supported by the evidence as a whole in the disabling degree alleged and therefore lacked credibility. I find that her conduct during the period under review has not been consistent with the level of pain and suffering she alleges. Her medical records are noteworthy for the lack of seeking medical attention on a regular basis, for failure to keep medical appointments, for noncompliance with treatments and medications, and for the observations of her treating physician and a consultative examiner that she exaggerates her symptoms. Although she alleges severe disabling multiple musculoskeletal pain since a motor vehicle accident in 1998, her medical records for most of the period under review until recently reveal that she visited her doctor on few occasions complaining of muscle and joint pain, and that the (sic) most of her visits concerned gynecological, anemia and thyroid checkups. My prior decision deals in detail with the period from 1988 to 1994 (Exhibit 13B).
>
> In March 1995, the claimant was complaining of chronic neck and back pain, and her diagnostic tests from that time revealed mild conditions. (Exhibit 11F at 75 and 76). At that time she also reported significant relief from her medications (Exhibit 11F at 73). Her records throughout 1995 reveal also that she made few doctor visits, and some of those visits concerned checkups for other than musculoskeletal complaints (Exhibit 11F). She also failed to keep several appointments. The record reveals the same in 1996 and 1997 (Exhibit 11F). The claimant did not regularly commence visiting her doctor for pain complaints until 1998. In May 1998, her treating doctor wrote that she exhibited manifestly exaggerated pain behavior (Exhibit 11F at 4). A similar observation was previously made by the consultative examiner who examined the claimant in April 1994 (Exhibit 4F).
>
> The record is noteworthy throughout the period under review for the claimant's noncompliance with medical treatments and the recommendations of her doctor. She has not attended psychological therapy or taken the prescribed psychotropic medications. She has not entered into a program of physical therapy. She has been inconsistent taking her hypothryroid medications, allowing her prescription to run out on several occasions and going without medications for significant periods of time. (Exhibit 11F). She has not kept many of the medical appointments scheduled by her doctors. She states she has financial problems which prevent her from buying medications and attending physical therapy, and problems with transportation which result in failures to keep her medical appointments. She alleges that these problems have persisted over the many years she alleges she has been disabled.

> I have observed in Finding #3 above that the claimant has had personal resources which she could have used to take care of her medical problems. Moreover, she has been eligible for free or low cost medical care, of which she has not completely taken advantage. I do not find it credible that over the period of several years the claimant has not been able to borrow or buy a car to drive, or to find a friend, family member or community volunteer in order to keep her medical appointments. She does not allege that she has ever made an effort to secure the medications and transportation she needs, or that she has ever been denied such help, and given the severity of her complaints, this is quite remarkable. I find her testimony that she is able to sit and stand for only 20 minutes at a time and lift only 5 pounds not credible for all the above reasons.
>
> \* \* \* \* \* \* \* \*
>
> Her main complaints of functional difficulties are associated with her reports and testimony of chronic multiple musculoskeletal pain. She has been diagnosed as having myofascial pain syndrome, which is a pain producing impairment. However, the evidence does not support the frequency and severity of the claimant's pain allegations, or the level of dysfunction she reports. As I have detailed in the paragraphs above, her conduct has not been consistent with her alleged symptoms, and her testimony as to her functional restrictions due to pain is not fully credible.

Tr. 217-19.

Nuñez contends the ALJ disregarded evidence which supports her credibility as to the severity of her pain. Specifically, Nuñez directs the Court to a letter from her treating physician at the Pain Management Clinic at the University of New Mexico's School of Medicine. In this letter, dated March 1, 1999, the physician stated Nuñez had been seen at the Pain Clinic for several years. Tr. 267. The physician also indicated Nuñez suffered chronic pain related to myofascial pain syndrome with a component of fibromyalgia, making movement painful. *Id.* The physician further reported Nuñez benefitted from regular trigger pain injections and medications for muscle spasms and pain. *Id.* Unfortunately, there are no records in evidence from the Pain Management Clinic.

At the March 2, 1999 administrative hearing, Nuñez' counsel introduced the letter from

the Pain Management Clinic physician and indicated she had not received the actual treatment or progress notes from the Pain Management Clinic although she had requested them. Tr. 362-63. The ALJ gave counsel additional time to submit the records. Tr. 364. Nuñez testified her condition had deteriorated and complained of constant pain in her upper back and shoulders. *Id.* Nuñez further testified that any new diagnostic tests were done at the Pain Management Center where she received treatment. *Id.* Nuñez claimed she had been receiving treatment at the Pain Management Center since her first administrative hearing in March, 1995 until the date of her second administrative hearing held in March, 1999. Tr. 365. Moreover, at the first administrative hearing held on March 7, 1995, Nuñez testified she was receiving treatment at the Pain Management Center. Tr. 197. Therefore, the evidence contradicts the ALJ's finding that Nuñez did not "regularly commence visiting her doctor for pain complaints until 1998." Nuñez testified she went to the Pain Management Center at least once a month and received trigger point injections, pain killers and muscle relaxants. *Id.* Because Nuñez' chief complaint is debilitating pain, medical records from the Pain Management Center are crucial in determining whether, in fact, Nuñez is disabled. Although the record indicates Nuñez had a problem following medical treatment for her hypothyroidism, anemia and depression, her physician at the Pain Management Center corroborates her testimony that she had been more diligent in seeking medical treatment for her chronic pain.

  The Court recognizes that "[a]lthough a claimant has the burden of providing medical evidence proving disability, the ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues." *Baca v. Dep't of Health and Human Servs.,* 5 F.3d 476, 479-80 (10th Cir. 1993). "This duty exists even when the claimant is represented by counsel." *Id.* In this

case, the Court will remand for further development of the record.  On remand, for the limited purpose of performing a pain evaluation pursuant to *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), the ALJ should include records from the Pain Management Clinic to reevaluate her credibility determination regarding Nuñez' allegations of debilitating pain and to reevaluate Nuñez' RFC.  It may assist the ALJ to have some input from Nuñez' treating physician at the Pain Management Center regarding how Nuñez' pain impacts on her ability to perform her past relevant work.

     Nuñez also contends the ALJ's finding that her depression was not a severe impairment under step two of the sequential evaluation process is contrary to law.  While Nuñez bears the burden of proving her disability, at step two her burden is "de minimis."  At step two, a claimant is required only to make a "de minimis showing" that her medically determinable impairments, in combination, are severe enough to significantly limit her ability to perform work-related activity. *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).  Although an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental abilities to do basic work activities, the possibility of several such impairments combining to produce a severe impairment must be considered.  *See* SSr 85-28, 1985 WL 56856, at *3, *4 (1985).  Under 20 C.F.R. §§ 404.1523 and 416. 923, when assessing the severity of whatever impairments an individual may have, the adjudicator must assess the impact of the combination of those impairments on the person's ability to function, rather than assess separately the contribution of each impairment to the restriction of his or her activity as if each impairment existed alone.  *Id.*  A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal

11

effect on the person's physical or mental abilities to perform basic work activities. *Id.* If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process. *Id.*

Additionally, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. SSR 96-8P, 1996 WL 374184, at *4 (July 2, 1996). Although a not severe impairment standing alone may not significantly limit an individual's ability to do basic work activities, it may be critical to the outcome of a claim when considered with limitations or restrictions due to other impairments. *Id.* In some instances, limitations due to a "not severe" impairment in combination with limitations imposed by an individual's other impairments, may prevent a claimant from performing past relevant work or may narrow the range of other work that the individual may still be able to do. *Id.*

In this case, the ALJ found at step two of the sequential evaluation process that Nuñez' depression only minimally impacted "her capacities for work related functioning" and determined that her mental impairment was not severe. Tr. 215. Pursuant to 20 C.F.R. § 404.1520a, the ALJ also completed the Psychiatric Review Technique (PRT) form. Nuñez testified she was "very depressed" but also reported she did not seek counseling or take antidepressants. On April 8, 1994, Nuñez complained to Dr. Schneider that she had been depressed for about two years but denied seeing a psychiatrist or psychologist and denied taking any psychoactive medication. Tr. 148. Dr. Schneider found "no restriction of daily interests or activities on the basis of any psychological problems." *Id.* Additionally, Dr. Schneider noted that he did not recommend any further psychiatric evaluation. *Id.* As noted above, Nuñez saw Dr. Goncalves in 1994 but never

12

saw him again until 1997. In 1997, Nuñez saw Dr. Goncalves only twice. Therefore, Dr. Goncalves never had the opportunity to assess or diagnose Nuñez with depression. Based on the record as a whole, the Court finds that the ALJ correctly determined at step two that Nuñez did not suffer from a severe mental impairment.

Nuñez next argues that the ALJ erred in her step four analysis by failing to assess the impact of her mental impairment on her ability to perform her past relevant work. The Court disagrees. The ALJ considered her mental impairment at step four. Specifically, the ALJ found Nuñez' mental impairment only minimally impacted her ability to work and cited to the evidence to support her finding. Tr. 215-20.

Nuñez also claims the ALJ failed to analyze the demands of her past relevant work. However, at the second administrative hearing, the ALJ specifically questioned Nuñez regarding the duties and requirements of her job. Tr. 379. In response, Nuñez stated she did typing, filing, assisted students with registration, and traveled to different sites to register students. *Id.* In addition, on December 29,1993, Nuñez submitted a Disability Report and indicated a typical day as a staff assistant entailed walking about one hour, standing about one hour, five hours of sitting, occasionally bending and reaching, and frequently lifting up to ten pounds. Tr. 63-68. This evidence was before the ALJ.

Finally, Nuñez claims the ALJ erred in ignoring the vocational expert's testimony in rendering her unfavorable decision. In her hypothetical, the ALJ included the functional limitations Nuñez testified to, i.e., inability to walk more than one block, sit or stand more than 15 or 20 minutes at a time and limited to lifting a maximum of ten pounds. Tr. 383. In response to the hypothetical question, the vocational expert testified there would be no jobs for Nuñez

because of the sit/stand limitation of 15 to 20 minutes.  *Id.*   However, questions to a vocational expert are proper when they take into account the impairments substantiated by the medical reports and the impairments accepted as true by the ALJ.  *See Gay v. Sullivan,* 986 F.2d 1336, 1340041 (10th Cir. 1993); *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990).  In this case, the ALJ did not believe Nuñez' alleged functional limitations.

## RECOMMENDED DISPOSITION

The ALJ did not apply correct legal standards and his decision is not supported by substantial evidence.  Nuñez' Motion to Reverse or Remand Administrative decision, filed March 21, 2000, should be granted.  This case should be remanded to the Commissioner to allow the ALJ to further develop the record for the limited purpose of performing a pain evaluation pursuant to *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), to reevaluate her credibility determination regarding Nuñez' allegations of debilitating pain and to reevaluate Nuñez' RFC if necessary.

JOE H. GALVAN
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.